DEC 8 2025 AM 11:55
FILED - USDC - FLMD - TPA

# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MARKETA MATHIS,

**Plaintiff**

v.

8:25-CV-3341-MSS-SPF

**C.A. No.**

AMERICAN FINANCE LLC,

9 SECOND RECOVERY

**Defendants.**

## COMPLAINT FOR VIOLATIONS OF THE
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### (18 U.S.C. §§ 1962(c) AND 1962(d))

## INTRODUCTION

1. Plaintiff Marketa Mathis, appearing pro se, brings this action against Defendants American Finance, LLC and 9 Second Recovery for violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962), theft and conversion under Florida law, fraudulent misrepresentation, violations of the Florida Deceptive and Unfair Trade Practices Act, and negligence resulting in the unlawful taking of Plaintiff's vehicle, destruction of her personal property worth over $10,500, and severe financial and emotional harm to Plaintiff and her

1



family, including her minor child with traumatic brain injury who requires ongoing medical care.

2. This case involves a systematic pattern of racketeering activity by Defendants including: (a) nine instances of tax fraud through false Profit & Loss write-offs reported to the IRS while actively collecting payments from Plaintiff; (b) false credit reporting to credit bureaus; (c) fraudulent misrepresentation of insurance coverage; (d) orchestrating the theft of Plaintiff's vehicle using a fictitious company name six months after charging off the account; (e) destruction of Plaintiff's personal property including wedding rings worth $3,500; (f) commercially unreasonable sale of the vehicle for $1,700 when its actual cash value was $17,000-$20,000; and (g) refusal to file a valid GAP insurance claim to avoid paying the resulting $23,117.52 deficiency that American Finance now illegally seeks to collect from Plaintiff.

3. Defendants' racketeering enterprise has caused devastating harm to Plaintiff and her family. Plaintiff is a disabled woman with chronic nerve damage and pending disability benefits. Her 16-year-old son suffered a traumatic brain injury and requires ongoing medical care and regular transportation to appointments. Before Defendants stole Plaintiff's vehicle, her family had two vehicles—one for Plaintiff to transport her brain-injured son to medical care while her husband worked, and one for her husband's courier work providing the family's only income. After the theft, the family has been left with one vehicle, forcing Plaintiff's husband to choose between earning income and ensuring their son receives necessary medical treatment.

**JURISDICTION AND VENUE**

2

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's federal RICO claims.

6. Venue is proper in the Middle District of Florida, Tampa Division pursuant to 28 U.S.C. § 1391(b) because: (a) Defendant American Finance, LLC is subject to personal jurisdiction in this District; (b) Defendant 9 Second Recovery operates and conducts substantial business in this District; and (c) a substantial part of the events giving rise to Plaintiff's claims occurred in Hillsborough County, Florida, within the Tampa Division of the Middle District of Florida.

7. Personal jurisdiction over Defendant American Finance, LLC is proper because American Finance purposefully directed its unlawful activities toward Florida, including: (a) entering into a retail installment contract with a Florida resident; (b) repossessing a vehicle located in Florida; (c) orchestrating the theft of Plaintiff's vehicle from her Florida residence; and (d) engaging in collection activities directed at Plaintiff at her Florida address.

8. Personal jurisdiction over Defendant 9 Second Recovery is proper because it regularly conducts repossession business in Florida, took Plaintiff's vehicle from Plaintiff's residence in Seffner, Florida (Hillsborough County), and the tortious acts of theft and conversion occurred entirely within Florida.

**9.** This case involves diversity of citizenship under 28 U.S.C. § 1332(a) because: (a) Plaintiff is a citizen of Florida; (b) Defendant American Finance, LLC is a citizen of Delaware (place of organization) and Delaware (principal place of business), making it diverse from Plaintiff; (c) Defendant 9 Second Recovery is believed to be a citizen of a state other than Florida; and (d) the amount in controversy exceeds $75,000, exclusive of interest and costs, as Plaintiff seeks treble damages under RICO (18 U.S.C. § 1964(c)) plus compensatory and punitive damages under state law claims.

## PARTIES

**10.** Plaintiff MARKETA MATHIS is an individual residing at 4015 Pine Street, Seffner, Florida 33584, Hillsborough County, within the Middle District of Florida, Tampa Division.

**11.** Plaintiff is a disabled woman suffering from chronic nerve damage, bulging disc in her lower back, and complications from ankle surgery. Plaintiff applied for disability benefits in November 2024 and her application remains pending. Plaintiff became unable to work in November 2024 due to her disabling conditions.

**12.** Plaintiff is married to DiWann Mathis, who works as a self-employed courier earning approximately $3,200 per month (fluctuating between $2,800 and $3,700 monthly). Mr. Mathis's courier income is the family's sole source of financial support.

**13.** Plaintiff is the mother of two minor children: a 16-year-old son and a 15-year-old daughter. Plaintiff's 16-year-old son suffered a traumatic brain injury and requires ongoing medical care,

4

therapy, and regular transportation to medical appointments for treatment of his brain injury.

**14.** Before Defendants stole Plaintiff's vehicle on July 30, 2025, Plaintiff's family had two vehicles: (a) Plaintiff's 2013 Cadillac Escalade, which Plaintiff used to transport her brain-injured son to his medical appointments while her husband worked; and (b) Mr. Mathis's vehicle, which he uses daily for his courier work that provides the family's only income. After Defendants stole Plaintiff's vehicle, the family has been left with only one vehicle, forcing Plaintiff's husband to choose between earning income and ensuring their brain-injured son receives necessary medical care.

**15.** Defendant AMERICAN FINANCE, LLC is a Delaware limited liability company with its principal place of business located at 17507 South DuPont Highway, Suite 1, Harrington, Delaware 19952. American Finance, LLC is authorized to do business in Florida and regularly conducts business within the Middle District of Florida. American Finance, LLC may be served with process at its principal office.

**16.** Defendant 9 SECOND RECOVERY is a repossession company operating in Florida with a place of business located within the Middle District of Florida. Upon information and belief, 9 Second Recovery regularly conducts repossessions in Hillsborough County, Florida and throughout the Middle District. 9 Second Recovery may be served with process at its principal place of business 11178 Commercial Way, Weeki Wachee, Florida 34614.

**FACTUAL BACKGROUND**

5

**A. The Finance Contract and Vehicle**

**17.** On or about January 10, 2023, Plaintiff entered into a Retail Installment Contract with American Finance, LLC for the purchase of a 2013 Cadillac Escalade, VIN: 1GYS4DEF3DR219326 (the 'Vehicle').

**18.** The Retail Installment Contract required Plaintiff to make bi-weekly payments of approximately $473 to American Finance, LLC. Plaintiff made regular payments to American Finance from January 2023 through July 2024.

**19.** As part of the financing arrangement, Plaintiff purchased a Guaranteed Asset Protection ('GAP') insurance policy from American Finance, LLC for which Plaintiff paid a premium of $595. This GAP policy was designed to cover the difference between the actual cash value of the Vehicle and the amount owed on the finance contract in the event of certain specified losses.

**20.** The Vehicle was Plaintiff's primary means of transportation for her family, including transporting her 16-year-old son with traumatic brain injury to his necessary medical appointments, therapy sessions, and treatments.

**B. Systematic Tax Fraud Through False Profit & Loss Write-Offs**

**21.** Between August 2023 and August 2025, American Finance systematically engaged in tax fraud by reporting Plaintiff's account as 'uncollectible' to the IRS on at least NINE separate occasions through quarterly Profit & Loss ('P&L') write-offs, even while: (a) Plaintiff was making regular payments; (b) Plaintiff's account had zero past due balance; (c) American

6

Finance was actively collecting payments; and (d) Plaintiff's account was current with no delinquency.

**22.** American Finance's systematic false reporting is evidenced by Plaintiff's TransUnion credit report, which shows 'PRL<' notations (indicating Profit & Loss write-offs) on the following dates:

(a) August 2023: First P&L write-off while Plaintiff paid $560.00, had $0.00 past due, and account rating was 'OK' (current with no delinquency);

(b) November 2023: Second P&L write-off while Plaintiff paid $836.00, had $0.00 past due, and account rating was 'OK' (current with no delinquency);

(c) February 2024: Third P&L write-off while Plaintiff paid $833.00, had $0.00 past due, and account rating was 'OK' (current with no delinquency);

(d) May 2024: Fourth P&L write-off while Plaintiff paid $994.00 (Plaintiff's HIGHEST payment ever made), had $0.00 past due, and account rating was 'OK' (current with no delinquency);

(e) August 2024: Fifth P&L write-off while Plaintiff's account was delinquent but Plaintiff still owned and possessed the Vehicle;

(f) November 2024: Sixth P&L write-off while Plaintiff's account was delinquent but Plaintiff still owned and possessed the Vehicle;

(g) February 2025: Seventh P&L write-off AFTER American Finance had already charged off Plaintiff's account on January 31, 2025;

7

(h) May 2025: Eighth P&L write-off while the account was charged off and Plaintiff still possessed the Vehicle;

(i) August 2025: Ninth P&L write-off, occurring one month AFTER Defendants stole Plaintiff's Vehicle on July 30, 2025.

23. During the first four P&L write-offs (August 2023, November 2023, February 2024, and May 2024), while American Finance was reporting to the IRS that Plaintiff's debt was 'uncollectible' to claim tax deductions, American Finance simultaneously: (a) collected $3,223.00 in payments from Plaintiff ($560 + $836 + $833 + $994); (b) reported to TransUnion that Plaintiff's account had $0.00 past due; (c) reported to TransUnion that Plaintiff's account rating was 'OK' (current); and (d) made no indication to Plaintiff that her account was considered uncollectible.

24. The May 2024 P&L write-off is particularly egregious: American Finance reported Plaintiff's account as 'uncollectible' to claim tax benefits while simultaneously collecting Plaintiff's HIGHEST payment of $994.00 and reporting to credit bureaus that the account was current with zero past due balance. This demonstrates the deliberate and fraudulent nature of American Finance's scheme.

25. American Finance's pattern of quarterly P&L write-offs demonstrates a systematic, automated scheme to defraud the IRS by claiming tax deductions for allegedly 'uncollectible' debts while actively collecting payments from consumers. This systematic fraud continued even after: (a) charging off Plaintiff's account (January 31, 2025); and (b) stealing Plaintiff's Vehicle (July 30, 2025), with the ninth and final P&L write-off occurring in August 2025, demonstrating the automated, ongoing nature of the fraud scheme.

**26.** Despite reporting Plaintiff's account as 'uncollectible' to the IRS through quarterly P&L write-offs, American Finance continued to report Plaintiff's account to credit bureaus as an active, collectible account.

**27.** American Finance's credit reporting showed steadily increasing balances even while claiming the debt was uncollectible for tax purposes: June 2024 balance of $18,114; December 2024 balance of $20,285; September 2025 balance of $24,297—an increase of $6,183 over fifteen months.

**28.** American Finance charged interest and fees on an account it had repeatedly declared 'uncollectible' for tax purposes, demonstrating the fraudulent nature of both the tax write-offs and the credit reporting.

**29.** American Finance reported the account to credit bureaus with increasing 'Past Due' amounts while simultaneously claiming to the IRS that the debt was uncollectible: July 2024 ($465 past due), August 2024 ($1,040 past due), September 2024 ($1,888 past due), continuing through January 2025 when the entire balance of $20,647 was shown as past due upon charge-off.

**30.** This systematic pattern of false reporting to both the IRS and credit bureaus was designed to: (a) obtain tax benefits by claiming debts as uncollectible losses; (b) continue collecting from consumers by maintaining active collection status; (c) damage consumers' credit to pressure payment; and (d) maximize profits through both tax fraud and continued interest/fee charges.

**31.** American Finance's dual false reporting scheme constitutes wire fraud under 18 U.S.C. § 1343 (electronic transmission of false information to credit bureaus and the IRS) and mail fraud

under 18 U.S.C. § 1341 (mailing tax documents containing false information).

## C. Fabricated Repossession Notice and Credit Report Contradictions

**32.** On November 21, 2025, in response to Plaintiff's Consumer Financial Protection Bureau complaint, American Finance submitted to the CFPB a purported 'Second Notice of Intent to Repossess' dated June 24, 2024, claiming Plaintiff owed $541.28 past due.

**33.** This June 24, 2024 notice is fabricated, as proven by Plaintiff's TransUnion credit report which shows that as of June 2024: (a) Plaintiff's payment was $473.00; (b) Past due amount was $0.00; (c) Account rating was 'OK' (current with no delinquency); and (d) The account balance was $18,114.

**34.** American Finance's own credit reporting to TransUnion directly contradicts its fabricated repossession notice: if Plaintiff truly owed $541.28 past due in June 2024, American Finance would have reported this to the credit bureau, yet the credit report shows zero past due.

**35.** The fabrication of this document and submission to a federal regulatory agency (CFPB) constitutes additional predicate acts under RICO: obstruction of justice under 18 U.S.C. § 1519 (creating false documents to obstruct a federal agency investigation) and false statements to a federal agency under 18 U.S.C. § 1001.

## D. Unlawful Vehicle Theft Using Fictitious Company

**36.** On January 31, 2025, American Finance charged off Plaintiff's account, reporting to credit

bureaus that the account was closed with a charge-off balance of $20,647. Under Florida law and industry practice, a charge-off terminates the creditor's security interest in collateral and represents the creditor's final determination that the debt is uncollectible.

37. Despite charging off the account and declaring it uncollectible, American Finance orchestrated the theft of Plaintiff's Vehicle on July 30, 2025—six months after the charge-off— by using a fictitious company name to evade legal requirements and conceal American Finance's involvement.

38. On July 30, 2025, 9 Second Recovery took Plaintiff's Vehicle from her residence at 4015 Pine Street, Seffner, Florida, purportedly on behalf of a company called 'Infinity Financing Solutions.' No business entity by the name 'Infinity Financing Solutions' exists in any state business registry, including Florida, Delaware, or any other jurisdiction.

39. In recorded telephone conversations with 9 Second Recovery, a company representative admitted that 9 Second Recovery operates through an 'indirect chain' and does not independently verify the identity or authority of parties ordering repossessions. The representative confirmed that 9 Second Recovery accepted the repossession order based solely on instructions purportedly from 'Infinity Financing Solutions' without verifying that such a company exists or has legal authority to order repossessions.

40. Upon information and belief, 'Infinity Financing Solutions' is a fictitious name used by American Finance or its agents to conceal American Finance's involvement in the unlawful taking and to evade statutory requirements for repossession after charge-off.

**41.** At the time of the taking, American Finance had no legal right to repossess the Vehicle because: (a) the account was charged off six months earlier, terminating the security interest; (b) American Finance had reported the debt as uncollectible to the IRS through nine P&L write-offs; (c) no valid default existed that would justify repossession; and (d) American Finance failed to comply with Florida's statutory requirements for lawful repossession.

**42.** American Finance's use of a fictitious company name to orchestrate the taking demonstrates consciousness of guilt and intent to evade legal accountability. This use of fictitious entities to conduct unlawful repossessions constitutes mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343.

**43.** In recorded telephone conversations, American Finance representatives admitted receiving Plaintiff's November 2024 certified letter informing them of Plaintiff's new Florida address at 4015 Pine Street, Seffner, Florida 33584.

**44.** Despite this actual knowledge of Plaintiff's Florida address, American Finance's November 21, 2025 CFPB response falsely claimed it sent repossession notices to an old address in New Jersey, stating 'we sent notices to the address we had on file.'

**45.** This false statement to the CFPB is contradicted by American Finance's own October 21, 2025 deficiency letter, which American Finance successfully sent to Plaintiff's correct Florida address at 4015 Pine Street, Seffner, Florida 33584, demonstrating American Finance knew and used Plaintiff's correct address for collection purposes while falsely claiming ignorance to the CFPB.

**46.** The credit report shows the charge-off occurred on January 31, 2025, yet American Finance did not attempt to repossess the Vehicle until July 30, 2025—six months later—demonstrating the taking was not prompted by default but was rather an opportunistic theft after charge-off when American Finance had no legal right to the collateral.

**47.** In its November 21, 2025 CFPB response, American Finance falsely claimed the Vehicle was '418 days past due' to justify the repossession. However, the credit report proves the Vehicle was actually 386 days past due when repossessed (from July 9, 2024 to July 30, 2025), demonstrating American Finance's willingness to fabricate numbers to justify unlawful conduct.

**48.** In its November 21, 2025 CFPB response, American Finance claimed 'Infinity Financing Solutions changed its name to Legacy Advantage Insurance,' but provided no documentation of this alleged name change, and no business entity records support the existence of 'Infinity Financing Solutions' or any name change to 'Legacy Advantage Insurance.'

**49.** The use of fictitious entities, false statements to federal regulators, and the six-month delay between charge-off and taking demonstrate a calculated scheme to steal the Vehicle while evading legal accountability.

**50.** American Finance's orchestration of the Vehicle theft through a fictitious company constitutes violations of: (a) wire fraud under 18 U.S.C. § 1343 (electronic communications coordinating the unlawful taking); (b) mail fraud under 18 U.S.C. § 1341 (false documents sent through mail); and (c) Florida's criminal statutes prohibiting theft and use of fictitious entities to commit fraud.

**E. Destruction of Plaintiff's Personal Property**

**51.** At the time 9 Second Recovery took the Vehicle on July 30, 2025, the Vehicle contained Plaintiff's personal property with a total value exceeding $10,500, including:

> (a) Plaintiff's wedding rings with a combined value of $3,500 (engagement ring valued at $2,000 and wedding band valued at $1,500);

> (b) Personal electronics including laptop computers, tablets, and mobile devices;

> (c) Personal documents, family photographs, and irreplaceable mementos;

> (d) Clothing, personal care items, and household goods;

> (e) Tools and equipment necessary for Mr. Mathis's courier business.

**52.** Plaintiff's wedding rings were of particular sentimental and monetary value. Plaintiff has photographs documenting the rings' appearance and characteristics.

**53.** In recorded telephone conversations after the taking, 9 Second Recovery representatives admitted that Plaintiff's personal property had been 'disposed of' and could not be returned to Plaintiff.

**54.** When Plaintiff requested the return of her wedding rings specifically, American Finance LLC representatives confirmed the property had been 'disposed of' and was no longer available, despite Florida law requiring repossession companies to inventory and safeguard personal property for owner retrieval.

**55.** In its November 21, 2025 CFPB response, American Finance contradicted 9 Second Recovery's admissions by falsely claiming 'no property existed' in the Vehicle at the time of taking. This false statement directly contradicts: (a) American Finance recorded admissions that property existed and was 'disposed of'; and (b) the substantial value of property Plaintiff kept in her Vehicle as her family's primary transportation.

**56.** The destruction and disposal of Plaintiff's personal property, including her irreplaceable wedding rings, constitutes conversion under Florida law and additional predicate acts of fraud under RICO.

**57.** Florida law requires repossession companies to maintain personal property found in repossessed vehicles and provide owners reasonable opportunity to retrieve such property. 9 Second Recovery's disposal of Plaintiff's property violated these requirements.

**58.** The loss of Mr. Mathis's business equipment has directly impaired his ability to earn income as a courier, further devastating the family's already precarious financial situation.

**59.** Defendants' coordinated destruction of Plaintiff's personal property was designed to: (a) prevent Plaintiff from documenting the condition of the Vehicle; (b) eliminate evidence of the unlawful taking; and (c) inflict maximum emotional and financial harm on Plaintiff.

**60.** The destruction of Plaintiff's wedding rings, in particular, has caused severe emotional distress to Plaintiff, as these irreplaceable items represented her marriage and family commitment and cannot be adequately compensated through monetary damages alone.

**F. Commercially Unreasonable Sale and GAP Insurance Fraud**

**61.** After unlawfully taking Plaintiff's Vehicle, Defendants sold the Vehicle for only $1,700 at a purported auction, despite the Vehicle having an actual cash value of between $17,000 and $20,000 according to industry valuation guides.

**62.** The sale of the Vehicle for $1,700—less than 10% of its actual cash value—was commercially unreasonable under Florida's Uniform Commercial Code and was designed to maximize the deficiency balance that American Finance could fraudulently claim from Plaintiff.

**63.** A commercially reasonable sale would have netted between $17,000 and $20,000, which would have significantly reduced or eliminated any deficiency balance. Instead, the artificially low sale price of $1,700 created a massive deficiency of $23,117.52 that American Finance now seeks to collect from Plaintiff.

**64.** American Finance made no reasonable efforts to obtain fair market value for the Vehicle. Upon information and belief, the purported 'auction' was conducted in a manner designed to depress the sale price and maximize the deficiency.

**65.** The commercially unreasonable sale violates Florida Statutes § 679.610, which requires secured parties to conduct disposition of collateral in a commercially reasonable manner.

**66.** As part of the financing arrangement, Plaintiff paid $595 for a Guaranteed Asset Protection (GAP) insurance policy. The GAP policy was specifically designed to cover situations where the debt exceeds the vehicle's value.

16

67. The GAP Agreement defines covered losses to include 'constructive total loss,' which occurs when: (a) the cost of repairs equals or exceeds the actual cash value; OR (b) the vehicle is stolen and not recovered within 30 days; OR (c) the primary insurance carrier declares it a total loss. No accident is required for GAP coverage to apply.

68. The commercially unreasonable sale that netted only $1,700 on a vehicle worth $17,000-$20,000 constitutes a constructive total loss under the GAP Agreement because the 'deficiency' created by the artificially low sale price vastly exceeds any reasonable actual cash value determination.

69. Despite the clear applicability of GAP coverage, American Finance has refused to file a GAP insurance claim to cover the deficiency created by its own commercially unreasonable sale.

70. In its November 21, 2025 CFPB response, American Finance falsely claimed GAP insurance was 'inapplicable because there was no accident or total loss event.' This statement is false because: (a) the GAP Agreement covers 'constructive total loss' without requiring an accident; (b) the commercially unreasonable sale that recovered less than 10% of actual value constitutes a constructive total loss; and (c) American Finance's own actions in conducting an unreasonable sale triggered the GAP coverage.

71. American Finance's refusal to file the GAP claim despite collecting $595 in premiums from Plaintiff constitutes insurance fraud and breach of contract. American Finance sold the GAP policy with no intention of filing legitimate claims when required.

72. If American Finance had: (a) conducted a commercially reasonable sale obtaining fair market

17

value ($17,000-$20,000); and (b) filed the GAP insurance claim as required, Plaintiff would owe nothing or only a minimal amount. Instead, American Finance now demands $23,117.52 based on its own fraudulent conduct.

73. American Finance's scheme was designed to: (a) conduct an unreasonably low sale to maximize deficiency; (b) refuse to file GAP coverage despite charging premiums; and (c) collect the artificially inflated deficiency from Plaintiff while retaining the GAP premiums.

74. The GAP insurance fraud constitutes violations of: (a) wire fraud under 18 U.S.C. § 1343 (false statements about GAP coverage transmitted electronically); (b) mail fraud under 18 U.S.C. § 1341 (mailing false documents regarding GAP coverage); and (c) Florida insurance fraud statutes.

75. American Finance's fraudulent scheme regarding GAP insurance demonstrates the systematic nature of the RICO enterprise: defraud consumers when selling policies, refuse to honor coverage when claims arise, and collect both premiums and fraudulent deficiencies.

## G. Deficiency Demand and Continued Collections

76. On October 21, 2025, American Finance sent Plaintiff a deficiency letter demanding payment of $23,117.52, calculated as follows according to American Finance: Balance owed $25,200.64, minus sale proceeds of $1,700, minus 'prior payments' of $383.12, equals deficiency of $23,117.52.

77. This deficiency demand is fraudulent and uncollectible because: (a) the account was charged

18

off on January 31, 2025, terminating any right to collect; (b) American Finance had no legal right to repossess the Vehicle six months after charge-off; (c) the sale was commercially unreasonable; (d) GAP insurance should cover any legitimate deficiency; and (e) American Finance reported the debt as uncollectible to the IRS nine times through P&L write-offs.

**78.** American Finance cannot simultaneously claim to the IRS that Plaintiff's debt is uncollectible (to obtain tax benefits) while demanding payment from Plaintiff. This demonstrates the fraudulent nature of either the IRS filings, the collection demand, or both.

**79.** The October 21, 2025 deficiency letter was sent to Plaintiff's correct Florida address at 4015 Pine Street, Seffner, Florida 33584, proving American Finance knew Plaintiff's correct address despite later falsely claiming to the CFPB that it sent notices to an old New Jersey address.

**80.** American Finance's deficiency demand constitutes violations of the Fair Debt Collection Practices Act (FDCPA) and Florida Consumer Collection Practices Act (FCCPA) because: (a) the debt was charged off and uncollectible; (b) the taking was unlawful; (c) the sale was commercially unreasonable; and (d) GAP insurance should cover any legitimate deficiency.

**H. Devastating Financial Impact on Plaintiff's Family**

**81.** As a direct result of Defendants' theft of Plaintiff's Vehicle, Plaintiff's family has suffered severe financial and personal hardship.

**82.** Plaintiff's 16-year-old son with traumatic brain injury requires regular transportation to medical appointments, therapy sessions, and treatments. Before the theft, Plaintiff used her

19

Vehicle to transport him while Mr. Mathis worked. After the theft, the family has only one vehicle, forcing impossible choices between medical care and earning income.

83. Mr. Mathis's courier business requires a vehicle for daily operations. When he must choose between using the family's only remaining vehicle for work or transporting Plaintiff's son to medical appointments, the family loses either income or necessary medical care.

84. Plaintiff has incurred substantial rental car expenses, estimated at $8,000 over twenty weeks ($400 per week), attempting to maintain both Mr. Mathis's income and their son's medical transportation. These expenses have pushed the family toward eviction from their residence.

85. Plaintiff's family is currently facing eviction and has negative bank balances due to the financial devastation caused by Defendants' theft of the Vehicle, destruction of personal property, and refusal to honor GAP insurance coverage.

## I. The RICO Enterprise

86. Defendants American Finance, LLC and 9 Second Recovery, together with fictitious entities including 'Infinity Financing Solutions,' constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) ('the Enterprise').

87. The Enterprise functions as an ongoing organization with: (a) a common purpose of defrauding consumers through unlawful repossessions, insurance fraud, and false reporting; (b) established relationships and hierarchy whereby American Finance directs and coordinates the activities of 9 Second Recovery and fictitious entities; (c) sufficient longevity to pursue the

20

enterprise's fraudulent purposes; and (d) systematic procedures for executing the fraudulent scheme across multiple victims.

**88.** The Enterprise operates through the following structure: American Finance serves as the primary decision-maker and beneficiary, orchestrating schemes to defraud consumers through false reporting, unlawful repossessions, and insurance fraud. 9 Second Recovery serves as the enforcement arm, executing vehicle thefts based on American Finance's instructions without independently verifying authority. Fictitious entities including 'Infinity Financing Solutions' serve to conceal American Finance's involvement and evade legal accountability.

**89.** The Enterprise engages in and affects interstate commerce through: (a) financing arrangements spanning multiple states; (b) electronic transmission of false information to credit bureaus operating nationwide; (c) electronic submission of false tax documents to the IRS; (d) interstate transportation and sale of unlawfully obtained vehicles; and (e) use of interstate wire and mail systems to execute fraudulent schemes.

**90.** The Enterprise is distinct from the pattern of racketeering activity and exists for purposes beyond the commission of predicate acts, including operating a consumer finance and repossession business, albeit through fraudulent means.

**J. Pattern of Racketeering Activity**

**91.** Defendants have engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of multiple predicate acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C. § 1519), and false statements to

federal agencies (18 U.S.C. § 1001).

**92.** The predicate acts are related because they: (a) involve the same victims (Plaintiff and similarly situated consumers); (b) involve the same methods (false reporting, unlawful repossessions, insurance fraud); (c) have similar results (unlawful enrichment at consumers' expense); and (d) are committed by the same enterprise using the same operational procedures.

**93.** The predicate acts demonstrate continuity because they: (a) occurred over a substantial period from August 2023 through November 2025 and ongoing; (b) are part of the Enterprise's regular way of doing business; (c) threaten continued criminal activity absent intervention; and (d) are committed pursuant to a long-term business strategy of defrauding consumers through systematic false reporting and unlawful collection practices.

**94.** The predicate acts include at least the following instances of wire fraud (18 U.S.C. § 1343):

(a) Nine electronic transmissions to the IRS falsely reporting Plaintiff's account as uncollectible through P&L write-offs (August 2023, November 2023, February 2024, May 2024, August 2024, November 2024, February 2025, May 2025, August 2025);

(b) Multiple electronic transmissions to TransUnion falsely reporting account status, balances, and past due amounts while simultaneously reporting to IRS as uncollectible;

(c) Electronic coordination between American Finance and 9 Second Recovery to execute the unlawful taking of Plaintiff's Vehicle using fictitious entity 'Infinity Financing Solutions';

(d) Electronic submission to CFPB on November 21, 2025 of fabricated June 24, 2024

repossession notice;

(e) Electronic submission to CFPB of false statements regarding GAP insurance applicability;

(f) Electronic submission to CFPB of false claim that notices were sent to New Jersey address when Florida address was known and used;

(g) Electronic transmission of deficiency demand on October 21, 2025 knowing debt was uncollectible and taking was unlawful.

95. The predicate acts include at least the following instances of mail fraud (18 U.S.C. § 1341):

(a) Mailing false tax documents to IRS reporting debt as uncollectible while actively collecting;

(b) Mailing October 21, 2025 deficiency demand for uncollectible debt resulting from unlawful taking;

(c) Mailing false credit reporting documents to credit bureaus;

(d) Mailing documents regarding GAP insurance containing false representations about coverage.

96. The predicate acts include obstruction of justice (18 U.S.C. § 1519) through: (a) creating and submitting fabricated June 24, 2024 repossession notice to CFPB to obstruct federal agency investigation; (b) destroying Plaintiff's personal property to eliminate evidence of unlawful taking; and (c) falsifying documents regarding GAP insurance to obstruct investigation.

**97.** The predicate acts include false statements to federal agencies (18 U.S.C. § 1001) through American Finance's November 21, 2025 CFPB response containing multiple material falsehoods including: (a) false claim that GAP was inapplicable due to 'no accident'; (b) false claim that Vehicle was 418 days past due when actually 386 days; (c) false claim that notices were sent to New Jersey address when Florida address was known and used; (d) false claim that 'no property existed' contradicting 9 Second Recovery's admissions; and (e) false claim regarding 'Infinity Financing Solutions' name change with no supporting documentation.

**98.** The pattern of racketeering activity was conducted through the Enterprise and caused Plaintiff to suffer direct injuries including loss of Vehicle worth $20,000, loss of personal property worth $10,500, rental car expenses of $8,000, credit damage, emotional distress, and threat of eviction, for total actual damages exceeding $77,000.

**CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF 18 U.S.C. § 1962(c)**

**CONDUCTING AFFAIRS OF ENTERPRISE THROUGH PATTERN OF RACKETEERING ACTIVITY**

**AGAINST ALL DEFENDANTS**

**99.** Plaintiff realleges and incorporates by reference paragraphs 10-16 (parties), 17-20 (contract), 21-35 (tax fraud), 36-60 (vehicle theft and property destruction), 71-80 (GAP fraud), and 86-98 (enterprise and pattern).

**100.** Defendants American Finance, LLC and 9 Second Recovery are 'persons' within the meaning of 18 U.S.C. § 1961(3).

**101.** As alleged in paragraphs 86-90, an association-in-fact enterprise exists consisting of Defendants and fictitious entities including 'Infinity Financing Solutions,' which enterprise engages in and affects interstate commerce.

**102.** Defendants conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, as alleged in paragraphs 91-98, consisting of multiple predicate

acts of wire fraud, mail fraud, obstruction of justice, and false statements to federal agencies.

**103.** The predicate acts were committed by Defendants in furtherance of the Enterprise's fraudulent purposes and were essential to the Enterprise's operations.

**104.** Plaintiff was injured in her business or property by reason of Defendants' violation of 18 U.S.C. § 1962(c).

**105.** Plaintiff's injuries were directly and proximately caused by Defendants' racketeering activity, including loss of Vehicle worth $20,000, loss of personal property worth $10,500, rental car expenses of $8,000, credit damage, emotional distress, and threat of eviction.

**106.** Plaintiff's actual damages exceed $77,000.

**107.** Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages in the amount of $231,000 ($77,000 × 3), plus costs and reasonable attorney's fees.

**COUNT II**

**CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(c)**

**VIOLATION OF 18 U.S.C. § 1962(d)**

**AGAINST ALL DEFENDANTS**

**108.** Plaintiff realleges and incorporates by reference paragraphs 10-16 (parties) and 86-98

(enterprise and pattern).

**109.** Defendants conspired and agreed to conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

**110.** Defendants had knowledge of the Enterprise and agreed to participate in its fraudulent purposes.

**111.** In furtherance of the conspiracy, Defendants committed overt acts including: orchestrating unlawful vehicle taking using fictitious entities, submitting false documents to federal agencies, destroying evidence, conducting commercially unreasonable sales, and refusing to file legitimate insurance claims.

**112.** Plaintiff was injured in her business or property by reason of Defendants' conspiracy to violate 18 U.S.C. § 1962(c).

**113.** Plaintiff's actual damages exceed $77,000.

**114.** Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages in the amount of $231,000 ($77,000 × 3), plus costs and reasonable attorney's fees.

## COUNT III

### THEFT AND CONVERSION (Florida Common Law)

### AGAINST ALL DEFENDANTS

**115.** Plaintiff realleges and incorporates by reference paragraphs 10-16 (parties), 36-60 (vehicle theft and property destruction).

**116.** Plaintiff had ownership and possessory rights in the Vehicle and personal property, including wedding rings worth $3,500.

**117.** Defendants intentionally and unlawfully took Plaintiff's Vehicle and personal property without legal authority, using a fictitious company name to conceal their conduct.

**118.** Defendants exercised unauthorized control over Plaintiff's property with intent to deprive Plaintiff of her rights therein.

**119.** Defendants sold the Vehicle for $1,700 and destroyed or disposed of Plaintiff's personal property worth $10,500.

**120.** Defendants' actions constitute theft and conversion under Florida common law.

**121.** As a direct and proximate result, Plaintiff has suffered damages exceeding $30,500 (Vehicle value $20,000 + personal property $10,500).

## COUNT IV

## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

**FLORIDA STATUTES §§ 501.201-501.213 (FDUTPA)**

**AGAINST AMERICAN FINANCE, LLC ONLY**

**122.** Plaintiff realleges and incorporates by reference paragraphs 10, 15 (parties), 21-35 (tax fraud), and 71-80 (GAP fraud).

**123.** American Finance engaged in unfair and deceptive practices in trade or commerce, including: (a) systematic false reporting to IRS and credit bureaus; (b) sale of GAP insurance with no intention of honoring coverage; (c) fabrication of documents submitted to federal regulators; and (d) collection of debts reported as uncollectible.

**124.** These practices offend public policy and are immoral, unethical, oppressive, and unscrupulous, causing substantial injury to consumers that outweighs any countervailing benefits.

**125.** Plaintiff suffered actual damages as a direct and proximate result of American Finance's unfair and deceptive practices.

**126.** Pursuant to Florida Statutes § 501.211, Plaintiff is entitled to recover actual damages, attorney's fees, and costs.

**COUNT V**

## FRAUDULENT MISREPRESENTATION (Florida Common Law)

## AGAINST AMERICAN FINANCE, LLC ONLY

**127.** Plaintiff realleges and incorporates by reference paragraphs 10, 15 (parties) and 71-80 (GAP fraud).

**128.** American Finance made material false representations that GAP insurance would cover deficiencies when American Finance had no intention of filing legitimate claims.

**129.** American Finance knew these representations were false or made them with reckless disregard for their truth.

**130.** Plaintiff justifiably relied on these representations in paying $595 for GAP coverage.

**131.** As a direct and proximate result, Plaintiff has suffered damages including the $595 GAP premium and the $23,117.52 deficiency that GAP should have covered.

## COUNT VI

## NEGLIGENCE AND BREACH OF DUTY (Florida Common Law)

## AGAINST 9 SECOND RECOVERY ONLY

132. Plaintiff realleges and incorporates by reference paragraphs 10, 16 (parties) and 36-60 (vehicle theft).

133. 9 Second Recovery, as a professional repossession company operating in Florida, owed Plaintiff a duty of care to:

(a) verify the identity and legal authority of parties ordering repossessions;

(b) confirm that proper legal authorization exists before taking vehicles;

(c) comply with Florida's statutory requirements for lawful repossession;

(d) not take vehicles based solely on unverified representations from unknown entities; and

(e) exercise reasonable care to avoid unlawfully depriving vehicle owners of their property.

134. 9 Second Recovery breached these duties by:

a. Taking Plaintiff's Vehicle on July 30, 2025 based solely on purported authorization from 'Infinity Financing Solutions,' a company that does not exist;

b. Failing to independently verify the identity or authority of 'Infinity Financing Solutions' before taking Plaintiff's Vehicle;

c. Operating through an 'indirect chain' of authorization without confirming who actually owns debts or has legal authority to order repossessions; and

d. Maintaining a business model that deliberately avoids verifying the legitimacy of

31

repossession orders, thereby enabling vehicle theft.

**135.** 9 Second Recovery's breach of duty was the direct and proximate cause of Plaintiff's injuries, including loss of Vehicle and personal property.

**136.** As a direct and proximate result, Plaintiff has suffered damages exceeding $30,500.

**137.** 9 Second Recovery's actions constitute negligence per se under Florida Statutes governing repossession companies' duties to verify authority before taking property.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

**1.** Award treble damages pursuant to 18 U.S.C. § 1964(c) in the amount of $231,000 ($77,000 actual damages × 3) for violations of RICO under COUNT I;

**2.** Award treble damages pursuant to 18 U.S.C. § 1964(c) in the amount of $231,000 ($77,000 actual damages × 3) for RICO conspiracy under COUNT II;

**3.** Award compensatory damages in the amount of $30,500 for theft and conversion under COUNT III;

**4.** Award actual damages for violations of FDUTPA under COUNT IV;

**5.** Award compensatory damages for fraudulent misrepresentation under COUNT V;

**6.** Award compensatory damages for negligence under COUNT VI;

**7.** Award punitive damages in an amount to be determined by the jury;

**8.** Award attorney's fees and costs pursuant to 18 U.S.C. § 1964(c) and Florida Statutes § 501.211;

**9.** Award pre-judgment and post-judgment interest as allowed by law;

**10.** Grant such other and further relief as the Court deems just and proper.


**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: <u>12/8/2025</u>

*<u>Marketa Mathis</u>*

**MARKETA MATHIS**

Plaintiff Pro Se

4015 Pine Street

Seffner, Florida 33584

Phone: (609)305-1419

**Email: mathisadlitem@gmail.com**